UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Jessica Ehlers,

    Plaintiff,

v.

University of Minnesota,

    Defendant.

_____

CIVIL FILE NO. _____

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, Jessica Ehlers, as and for her Complaint against Defendant, University of Minnesota, through her attorney, states and alleges as follows:

**PARTIES**

1. Plaintiff is a person with disabilities living in St. Paul, Minnesota. From November 12, 2012 until April 17, 2017 Plaintiff was employed by Defendant in its Boynton Health Services. She brings this action to secure redress for Defendant's violation of her right (a) to be free from employment discrimination and harassment based on her disabilities, (b) to reasonable accommodation of her disabilities, and (c) to be free of retaliation for engaging in protected activity under the Americans with Disabilities Act ("ADA").

2. Defendant is an agency of the State of Minnesota and an employer within the meaning of the ADA.

**JURISDICTION & VENUE**

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331 in that this case arises under federal law, specifically, the ADA 42 U.S.C. §§ 12112(a), 12112(b)(5)(A)-(B) and

1

12203(a).

4. Venue is proper in the District of Minnesota because the unlawful employment discrimination and retaliatory actions giving rise to Plaintiff's claims occurred in Minnesota.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. Plaintiff has exhausted her administrative remedies. On or about December 20, 2016, Plaintiff filed a timely administrative charge against Defendant with the U.S. Equal Employment Opportunity Commission (EEOC). On or about September 20, 2017, Plaintiff timely filed a second administrative charge against Defendant with the U.S. Equal Employment Opportunity Commission (EEOC).

6. Though the parties attempted to set up early mediation, the mediation never took place because of preconditions required by Defendant. On July 11, 2018 the EEOC closed its files without a determination and notified Plaintiff of her right to sue Defendant. (Ex. #1 and Ex. #2).

**FACT ALLEGATIONS**

7. Plaintiff has a permanent physical condition known as a temporomandibular joint disorder, commonly known as TMJ. ("TMJ"). Her TMJ substantially impacts on a numerous major life activities, including limiting her ability to eat, speak, and work in noisy environments without causing pain, including but not limited to severe migraine headaches.

8. Her TMJ additionally affects several other musculoskeletal areas such as her neck, arms, and wrists, limiting her ability to perform repetitive tasks using her arms and hands

without causing pain.

9. Plaintiff commenced her employment with Defendant as an Administrative Assistant to the Director of Nursing on November 12, 2012. She had a private office in which to do her work. Her essential job duties primarily consisted of paperwork with very little need to engage in lengthy conversations, except to occasionally assist as a back-up receptionist.

10. Plaintiff was fully qualified to perform all the essential duties of an Administrative Assistant.

11. Commencing on or about January, 2014, Plaintiff's supervisor required her to significantly increase the amount of time she needed to spend as the department's back-up receptionist, decreasing the amount of time other co-workers spent as receptionists. This significantly aggravated her TMJ causing muscle spasms, increased pain in her jaw, throat, ears, eyes, headaches and locked jaw, resulting in trouble with speaking, eating, impaired jaw range of motion and facial expressions.

12. On April 6, 2015 Plaintiff informed her supervisor of her disability and requested reasonable accommodation amounting to adjusting the amount of time she was required to perform receptionist duties. Her supervisor refused and told Plaintiff to get permission from her co-workers. Her co-workers refused to give the relief she needed to accommodate her disability.

13. On April 6, 2015, Plaintiff informed Defendant's Vice Provost and Director of Boynton Health Services of her TMJ disability.

14. On April 7, 2015 Plaintiff informed Defendant's Human Resources Department of her disability and requested reasonable accommodation. The Human Resources Director

3

advised her against formally requesting reasonable accommodation and counseled her to just take speaking breaks as needed.

15. In May, 2015, after taking the advice of the Human Resources Director, Plaintiff's supervisor threatened her with termination if she continued to take the speaking breaks she needed. In addition, requests by non-disabled employees to perform less receptionist work were granted and resulted in Plaintiff being assigned even more receptionist work time, further exacerbating her disability.

16. On or about May 14, 2015 Plaintiff's supervisor and the Human Resources Director accused Plaintiff of making "baseless" complaints that her supervisor or others were not observing her disability needs and threatened Plaintiff that any future complaints would be treated as performance issues.

17. Plaintiff continued to press the need to have relief from the receptionist duties as she was told upon being hired that she would not be a receptionist and such duties were described as minimal. Despite Plaintiff's efforts, Defendant's Human Resources Director and Plaintiff's supervisor continued threatening Plaintiff, that if she failed to increase work time as a receptionist, or had any other issues, she would not have a job.

18. On October 7, 2015 Plaintiff was told she was being involuntarily transferred to the Office of Student Health Insurance as an Executive Office and Administrative Specialist. This new position was under a different supervisor and, despite Defendant's knowledge of Plaintiff's disability, in a call/walk-in center where her duties required constant talking on the phone and in-person with students and student's parents.

19. Plaintiff protested this transfer as being retaliatory for her having requested reasonable accommodation of her TMJ disability. Defendant's HR Director's only response to her

protest was "you can't prove it."

20. From October, 2015 to July, 2016, Plaintiff efforts to get new her supervisor to give her some reasonable accommodation were rejected and she was assigned to be first in the queue to receive in-coming calls, resulting in even further aggravation of her disability.

21. On June 20, 2016, despite the prior admonition from the Human Resource Director against formally seeking reasonable accommodation, Plaintiff formally requested to register her disability with Defendant's Office of Disability Services.

22. On July 19, 2016, Plaintiff formally requested reasonable accommodation of her disability through her doctor.

23. The aggravation of Plaintiff's disability from having increased her speaking related duties as receptionist and the subsequent involuntary transfer to a position that required even more significant speaking resulted in her doctor recommending complete medical leave from August 22, 2016 to October 1, 2016, with intermittent leave needed thereafter.

24. Plaintiff went on FMLA leave as a result of needing relief for the aggravation of her disability.

25. Plaintiff was cleared to return to work on October 1, 2016 with a request for an accommodation of 15 minute non-speaking work periods each hour, including a 15 minute non-speaking period just before lunch.

26. On September 28, 2016 Defendant informed Plaintiff that the accommodation requested was being denied because the job "cannot be restructured to a non-speaking or reduced speaking position." Plaintiff was told that she could only use approved sick leave and remaining FMLA leave to manage her disability.

27. Plaintiff was also told to report to the Disability Resource Center to explore the possibilities for a job transfer. However, Plaintiff was also told that to explore a job transfer would require her to actually quit her job and there was no guarantee she would obtain another position.

28. Upon her reporting for work on October 3, 2016, Plaintiff was not restored to her previous job duties. While her call center duties to advise students and parents about insurance products remained, Plaintiff was removed from processing and decision-making for RFI programs. Instead, she was assigned mundane data entry duties performed by lower classified employees that aggravated the musculoskeletal effects from her TMJ on her arms, wrists and hands.

29. Plaintiff's supervisor explained the change of duties as a routine rotation of duties among her co-workers. However, the non-disabled co-worker assigned to Plaintiff's job during her leave of absence continued to perform Plaintiff's job.

30. Upon her return to work, Plaintiff also learned that her supervisor had recommended that all the employees, except Plaintiff, who were doing the same work be reclassified, resulting in a promotion, significant pay increase, and increased job transfer flexibility for them and denying Plaintiff the same.

31. Plaintiff protested the changes in her job and denial of reclassification as being retaliatory for requesting reasonable accommodation and discriminatory based on her disability.

32. On December 2, 2016 Plaintiff was again informed that Defendant could not accommodate a 15 minute non-speaking period each hour, but if she wanted a 15 minute non-speaking period she could ask her supervisor for permission to take one, if the pace

of business allowed.

33. Plaintiff has been persisted in engaging Defendant in an interactive process to find reasonable accommodation for her disability. Defendant, on the other hand, has rejected all reasonable accommodations suggested by Plaintiff without offering any alternative reasonable accommodations.

34. In addition, Defendant started requiring Plaintiff to maintain records not required of any other employee in the Office of Student Health Insurance, including

    a. All her phone calls and the length of the call;

    b. All in-person speaking time and length;

    c. All non-speaking time;

    d. All work performed during any non-speaking period.

35. Due to Defendant's failure to provide Plaintiff with reasonable accommodate for her disability, by March, 2017 she had exhausted all her FMLA leave, sick leave, and other leave.

36. On April 17, 2017, Defendant denied Plaintiff any further leave time or other reasonable accommodation and terminated her employment. Defendant coded Plaintiff's termination as being "for cause" and citing attendance violation.

37. On April 18, 2017 Plaintiff was notified by Defendant's Disability Resource Center that she was eligible for Defendant's Job Transfer Process as an employee covered by the American's with Disabilities Act Amendments (ADAAA).

38. On September 8, 2017 Plaintiff was notified by Defendant's Human Resources Office that she was now in the Priority Hire/Job Transfer Program.

39. That due to the aggravation of her disability resulting from Defendant's above-cited

conduct and despite her other qualifications, Plaintiff has been significantly restricted in the types of jobs and number of hours she can work with or without reasonable accommodation.

40. Plaintiff has applied for numerous open positions with Defendant for which she deemed herself qualified. She received only one conditional job offer and that offer was withdrawn after the hiring manager learned of the reasonable accommodations Plaintiff needed and was being requested to fully perform the essential duties of the job.

41. That Defendant has placed barriers to Plaintiff being employed by Defendant including,

   a. Placing her disability complaints in her personnel file, making it accessible to hiring managers,

   b. Classifying Plaintiff in a way that discloses her disability status to hiring managers and others,

   c. Removing Plaintiff from the Job Transfer Program, and

   d. Refusing to provide reasonable accommodations in order to afford Plaintiff any opportunity for employment.

**CAUSES OF ACTION**

COUNT I
DISABILITY DISCRIMINATION (ADA)

42. Plaintiff realleges and incorporates herein all prior paragraphs of her Complaint.

43. Plaintiff is a disabled person within the meaning of the ADA and ADAAA.

44. Plaintiff was and is qualified for the position of Administrative Assistant to the Director of Nursing and similar positions, with or without reasonable accommodation.

45. That Defendant was aware of Plaintiff's disability.

46. That upon knowing and because of Plaintiff's disability Defendant made adverse employment decisions and took adverse employment actions against Plaintiff, to wit:

    a. Plaintiff's supervisor, the Director of Nursing, made unnecessary changes in her job duties that substantially and adversely impacted on Plaintiff's disability and employment.

    b. In concert with Defendant's Human Resources Office, the Director of Nursing had Plaintiff involuntarily transferred to a position even less compatible with Plaintiff's disability and resulting in even further adverse impact on Plaintiff's physical well-being and employment.

    c. Denied Plaintiff a promotion, pay increase, and job transfer flexibility granted to non-disabled employees in her same classification, department, who were performing the same duties.

    d. Terminated Plaintiff's employment instead of providing reasonable accommodation as required by law.

47. That the above conduct by Defendant constitutes discrimination based on Plaintiff's disability under the ADA.

48. That as a result of Defendant's conduct Plaintiff has suffered damages of present and future lost wages and benefits, physical and emotional distress, humiliation, and an adverse employment record impacting on her career expectations.

## COUNT II.
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION

49. Plaintiff realleges and incorporates herein all prior paragraphs of her Complaint.

50. Plaintiff engaged Defendant in an interactive attempt to obtain reasonable

accommodations related to her disability in order to be able to fully perform all essential duties of her job.

51. The accommodations requested by Plaintiff through her physicians were reasonable and would not impose any hardship on Defendant.

52. Defendant failed and refused to approve, implement and provide Plaintiff with the requested reasonable accommodations.

53. Defendant failed and refused to offer its own reasonable alternatives to fully accommodate Plaintiff's disability.

54. That as a result of Defendant's conduct Plaintiff has suffered damages of present and future lost wages and benefits, physical and emotional distress, humiliation, and an adverse employment record impacting on her career expectations.

## COUNT III.
## RETALIATION

55. Plaintiff realleges and incorporates herein all prior paragraphs of her Complaint.

56. Plaintiff engaged in protected conduct under the ADA.

    a. She reported her disability to Defendant and requested reasonable accommodation.

    b. She objected to the changing of job duties on the basis of her disability.

    c. She protested the involuntary transfer to another supervisor and position as being retaliatory and wholly incompatible with her disability.

    d. She filed complaints with the EEOC.

57. In response to Plaintiff's protected conduct under the ADA, Defendant retaliated against Plaintiff by:

    a. Involuntarily transferring her to a job specifically known to be incompatible with her disability without some reasonable accommodation.

    b. Denying Plaintiff a promotion, pay increase and other benefits granted to non-disabled employees doing the same work as Plaintiff.

    c. Denying Plaintiff requests for reasonable accommodation without a showing of hardship or offering alternatives.

    d. Entering false information into Plaintiff's employment record.

    e. Terminating Plaintiff's employment.

58. That as a result of Defendant's retaliatory conduct Plaintiff has suffered damages of present and future lost wages and benefits, physical and emotional distress, humiliation, and an adverse employment record impacting on her career expectations.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully prays for the following relief:

A. Awarding Plaintiff all relief available under the ADA, including, but not limited to wages, benefits, out of pocket expenses, and other compensation denied or lost to her by reason of Defendant's unlawful conduct described in the paragraphs above, in amounts to be determined at trial, with pre-judgment and post-judgment interest, as provided by law;

B. Awarding Plaintiff compensatory damages for her emotional pain, suffering, mental anguish, humiliation, and embarrassment caused by Defendant's unlawful conduct in such amount to be determined at trial;

C. Award Plaintiff such exemplary and punitive damages for its malicious and reckless conduct, in such amounts to be determined at trial;

D. Awarding Plaintiff her reasonable attorney fees, costs, and expenses in this action to the extent allowable by law;

E. Awarding Plaintiff such other and further relief as available at law or equity, including removal of all negative or adverse employment records or files relating to Plaintiff's job performance; and

F. Awarding Plaintiff such other and further relief as the Court deems necessary and proper in Plaintiff's and the public's interest.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff requests a jury trial on all questions of fact raised by her Complaint.

CALDECOTT & FORRO, P.L.C.

Dated: September 28, 2018

By /s/ David R. Forro
David R. Forro (#150708)
8441 Wayzata Boulevard, Suite 285
Golden Valley, MN 55426
Telephone: (612) 332-4455
Facsimile: (612) 332-4030
drforro@caldecottandforro.com
ATTORNEY FOR PLAINTIFF